No. 5220.

ROBERT GILES *v.* THE STATE.

MURDER—FACT CASE—CHARGE OF THE COURT.—See the statement of the
case for evidence *held* sufficient to support a conviction for murder of the
first degree, founded upon the defendant's plea of guilty; and also for a
charge of the trial court, *held* to be correct, the evidence proving that
the homicide was committed in the perpetration of robbery, which the
Penal Code, Article 606, makes murder in the first degree *per se.*

APPEAL from the District Court of Henderson.   Tried below
before the Hon. F. A. Williams.

The appellant in this case, upon his own plea of guilty, was
convicted in the first degree for the murder of Albert Williams,
in Henderson county, Texas, on the first day of October, 1886.
The death penalty was assessed by the jury.

John Williams was the first witness for the State. He testified,
in substance, that he had known the defendant since August,
1886, and considered him an ordinarily intelligent though not
a "bright" negro.   During this time, from August until his ar-
rest, the defendant worked alternately for the railroad and for
private parties.   On the morning of December 14, 1886, defend-
ant came to witness's house and said that he had not yet had
his breakfast, and that he was going to "where old man Albert
(deceased) is, and get the key so that I can get into our house
and get some breakfast."   Defendant and deceased were then
working together in the woods, splitting rails, and lived in the
same house.   Within a short time the defendant returned, and
said that he had found old Albert dead in the woods where he
had been at work.   Witness followed the defendant to a point
in the woods where the body lay, the head, arms and shoulders
being in a fire.   Witness examined the body, and found the
skull crushed in the left side of the head.   The blow was struck
evidently with a blunt instrument, most probably the poll of an
axe.   The shirt was burned off the body down to the waistband
of the pants.   The pockets of the pants had been turned wrong
side out, and the insides of the pockets were somewhat burned.
The deceased's dinner bucket and water jug, with their contents

intact, were found near the body, and his axe about fifteen feet distant. Witness also found near the body the rim of a small sack or purse, the bag part having been burned. By scratching among the leaves, he soon found, some little distance from the fire, a large spot of blood. The blood, being coagulated, indicated that the body lay at that point some time before it was dragged to the fire. Defendant said that he and deceased worked together at and about that place on the Monday and Tuesday before the Thursday on which the body was shown to the witness. He remarked that he could see that the old man had done but little on Wednesday, as, with the exception of three or four rails immediately about the body, he had himself previously cut all that were in the vicinity. The body was found in a very dense thicket of undergrowth, about four hundred yards distant from the witness's house. On the same day that he was shown the body of deceased by the defendant, the witness saw the defendant in possession of four dollars in silver, and a five dollar bill, which bill the witness recognized as the one he had but three days before paid to deceased. Defendant said that he got that bill from the deceased. Further search discovered the defendant's axe concealed in a vacant out house near the house in which the defendant lived. It had blood on both the poll and the handle. Later in the day witness and Knutson took the defendant to his, defendant's, house. Defendant, without hesitation, produced the key from a crevice, opened the door and admitted the party. Defendant did not get that key from deceased's body on that day. Search of the room discovered an old ragged pair of pants, with blood stains on the legs. Witness had these pants within reach, and but few minutes since showed them to Mr. Ben Fuller. This all occurred in Henderson county, Texas.

Ben Fuller testified, for the State, that he lived in a house which stood not more than six feet from the house occupied by defendant and deceased. The defendant and deceased, who worked as rail splitters together, and who lived together, always went to the woods together early in the morning and returned together late in the evening. The witness usually saw them when they went from, and came back home. They left together on the morning of Wednesday before the discovery of the body, but did not return to their house on that night. They worked in the woods together on the preceding Monday and Tuesday. On Wednesday morning when the defendant and deceased left

home to go to the woods, the defendant had on the old ragged pants described by Mr. Williams, and on which there were blood stains. On Thursday at noon, when witness saw the body and saw the defendant for the first time since the preceding day, defendant had on a different pair of pants. Witness knew the bloody pants described by Williams to belong to defendant, and that the defendant wore them to the woods on Wednesday morning.

The State closed.

Two witnesses for the defense testified that they considered the intelligence of the defendant to be below that of an ordinary negro. He, however, was sane, and knew right from wrong.

The charge given to the jury was as follows: "The defendant pleads guilty to the charge of murder contained in the indictment which has been read to you, and your duty is to determine of what degree of murder he is guilty, and to assess the proper penalty.

"Murder is the unlawful killing of a reasonable creature in being, by a person of sound memory and discretion, with malice aforethought, either express or implied. Malice in its legal sense means more than hatred, malevolence or ill will on the part of defendant towa...s the party slain. It is a state or condition of the mind which denotes a wicked, depraved or malignant spirit, or a heart regardless of social duty and fatally bent on mischief. Malice is of two kinds, express and implied.

"Express malice is where one, with a sedate and deliberate mind and formed design, kills another; which formed design must be evidenced by external circumstances. This express malice must always be shown by evidence in the case, beyond a reasonable doubt, before there can be a conviction of murder in the first degree, based upon it. Where the fact of an unlawful killing is admitted, and there are no circumstances in evidence which show the existence of express malice, nor any which may tend to justify, excuse or mitigate the act, the law implies malice. Murder committed with express malice is murder in the first degree. Also, murder committed in the perpetration, or in the attempt at the perpetration, of robbery, is murder in the first degree. Murder committed with implied malice is murder of the second degree.

" Therefore, if the evidence shall show, beyond a reasonable doubt, that defendant, when he killed Albert Williams, did so in the perpetration of robbery, or in the attempt at the perpetration

of robbery, or that he killed deceased in pursuance of a design to kill him formed while his mind was cool, calm, and undisturbed by passion sufficiently to admit of cool reflection upon the nature and character of the act he contemplated, that he would be guilty of murder in the first degree. But, unless it does appear beyond a reasonable doubt that the killing was done either with express malice or in the perpetration, or attempt at perpetration of robbery, he would be guilty only of murder in the second degree.

"Robbery is when one by assault, or by violence, fraudulently takes from the person or possession of another any property, with intent to appropriate the same to his own use. If you find defendant guilty of murder in the first degree, say by your verdict: 'We, the jury, find defendant, Robert Giles, guilty of murder in the first degree, and assess his punishment at,' and add such penalty as you may assess, which will be either death or confinement in the penitentiary for life, as you may determine. If you find his offense to be murder in the second degree, your verdict will be in the following form: 'We, the jury, find defendant, Robert Giles, to be guilty of murder in the second degree, and assess his punishment at,'—and add the penalty you assess, which will be confinement in the penitentiary for any term of years not less than five.

"Let your verdict be signed by your foreman, whom you will select. Your verdict will be based upon the evidence which has been introduced before you, in finding the degree of the offense and fixing the penalty."

No brief for the appellant has reached the Reporters.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This is an appeal from a judgment of conviction of murder in the first degree, the punishment being assessed at death. The case is a novel one in the jurisprudence of our State.

Appellant, when first arraigned upon the indictment against him in the lower court, pleaded guilty to the charge, whereupon the court duly admonished him of the consequences of said plea; and the judgment recites that, before the court would receive and allow the plea to be entered, it was made plainly to appear to the court, as provided by statute (Code Crim.

Proc., art. 518), that the defendant was sane, and was uninflu-
enced by any consideration of fear, or by any persuasion or
delusive hope of pardon, prompting him to confess his guilt.    As
shown by the record, the plea was s  'icient and good under the
statute and decisions of this court.  (Saunders v. The State, 10
Texas Ct. App., 336; Wallace v. The State, Id., 407; Sanders v.
The State, 18 Texas Ct. App., 372.)

After this trial and conviction of murder in the first degree,
with the death penalty assessed against him, which was on
February 21, 1887, appellant's counsel moved for a new trial,
and said motion was sustained by the court, the verdict and
judgment being set aside and the case set for trial again on
February 24, 1887.   When the case was called for trial on the
appointed day, and the defendant was called upon again to plead
anew to said indictment, he again persisted in pleading guilty,
notwithstanding his previous conviction and the death penalty,
and notwithstanding that, in receiving and permitting his new
plea to be entered, all the requisites of the statute (art. 518,
supra) were observed and again complied with.

Being a second time convicted, his counsel made a motion for
a new trial, based upon two grounds, to wit:  First, "because
the evidence introduced upon the trial of said cause was not
sufficient to show that defendant was guilty of murder in the
first degree, as required by law."   Second, "because the court
erred in the charge to the jury, wherein the jury are instructed
that 'your duty is to determine of what degree of murder he is
guilty, and to assess the proper penalty;' it being also the duty
of the jury to find if the evidence showed the defendant to be
guilty of the offense, outside of his plea of guilty."

In so far as the first ground of the motion is concerned, we
deem it only necessary to say that, in our opinion, the evidence
adduced was amply sufficient to establish a case of murder in
the first degree,—a homicide in the perpetration of robbery,
which is *per se* murder in the first degree.  (Penal Code, art.
606.)

In so far as the second ground of the motion is concerned, the
charge of the court fully, fairly and sufficiently submitted the
law applicable to the facts to the jury, and also proper instruc-
tions as to their duty under the law.   (Sanders v. The State, 18
Texas Ct. App., 372.)

No reason has been made to appear why the extreme penalty
of the law should not be carried out as has been prescribed by

the judgment of the court below, and said judgment is therefore in all things affirmed.

Opinion delivered April 13, 1887.